**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>MUHAMMED AL- IDRISI<br><br>Debtor<br><br>JOHN O. DESMOND, CHAPTER 7 TRUSTEE OF MUHAMMED AL-IDRISI,<br>Plaintiff<br><br>v.<br><br>HUSSAM EDRISSI (a/k/a SAM EDRISSI),<br><br>Defendant | Chapter 7<br>Case No. 20-12457-CJP<br><br><br><br>AP No. 21-01017-CJP |

**MEMORANDUM OF DECISION**

**I.    Summary of Matters Being Determined**

On October 1, 2021, the Court held an evidentiary hearing (the "Hearing") on the *Motion for an Order (a) Authorizing and Approving Proposed Sale of Real Property Located at 134 Walnut Street, Malden, MA Subject to Counteroffers; (b) Approving such Sale Free and Clear of All Liens, Claims, Encumbrances and Other Interests[;] and (c) Authorizing Payment of Certain Sale Costs* [Dkt. No. 65] (the "Sale Motion") filed by the Chapter 7 Trustee, John O. Desmond (the "Trustee"), pursuant to which the Trustee seeks to sell both the interest of the estate of the Chapter 7 debtor, Muhammed Al-Idrisi (the "Debtor") and the interest of the non-debtor co-owner, Hussam Edrissi a/k/a Sam Edrissi ("Sam Edrissi" or "Mr. Edrissi"), in property located at 134 Walnut

Street, Malden, MA (the "Property"), subject to the disposition of the § 363(h)[1] complaint (the "Complaint") brought by the Trustee in adversary proceeding No. 21-01017 (the "Adversary Proceeding") against Mr. Edrissi. The Hearing on the Sale Motion also concerned certain other filings related to the Sale Motion: the objection to thereto [Dkt. No. 121] (the "Sale Objection") filed by Mr. Edrissi, the response of Trustee to the Sale Objection [Dkt. No. 128] (the "Response"), and the reply to the Response by Mr. Edrissi [Dkt. No. 134] (the "Reply").

Concurrently with the Hearing on the Sale Motion, which resulted in a cash bid of $652,000 being designated as the highest and best bid for the Property (the "Highest Bid"),[2] the Court conducted a trial in the adversary proceeding to determine whether the Trustee could meet his burden under § 363(h) to obtain authority to sell Mr. Edrissi's interest with the Debtor's interest. Section 363(h) provides that a trustee may sell both the estate's interest and the interest of any co-owner in property in which the debtor had, at the time of commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety if:

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or the "Code").

[2] A number of counteroffers from third parties having been submitted in connection with the Sale Motion, the Court implemented certain sealed bid procedures and conducted a sealed bid auction at the Hearing and, at the conclusion of the auction process, designated a bid of $652,000 as the highest and best bid for the Property and placed a copy of the sealed bid on the docket. *See* Dkt. No. 136. The Court also designated a back up bid in the event that the highest bid failed to close the transaction if the Court ultimately approved the sale. *See* Dkt. No. 137.

11 U.S.C. § 363(h). On summary judgment, the Court had previously ruled in favor of the Trustee as having demonstrated an absence of material disputed facts as to subsection (h)(1) (the impracticability of partition) and (h)(4) (use of property for energy purposes) of § 363. The focus of the Hearing, therefore, was whether the Trustee could demonstrate by a preponderance of the evidence that the sale of the estate's undivided interest in the Property would realize significantly less for the estate than sale of the Property free of the co-owner's interest (subsection (h)(2)) and whether the benefit to the estate of a sale of the Property free of the interests of the co-owner outweighs the detriment, if any, to Mr. Edrissi (subsection (h)(3)) such that the Court should authorize a sale of Mr. Edrissi's interest in the Property along with the estate's interest.

At the Hearing, the Court also heard the Trustee's *Motion to Approve the Stipulation of Settlement filed at [Dkt. No. 91] Between the Trustee and Wells Fargo Bank, NA as to (1) Consensual Sale of Real Property Pursuant to 11 USC Section 363(f); (2) Allowance of First Mortgage Claim and Assent and Waiver of Second Mortgage; (3) Minimum Guaranteed Payment to General Unsecured Creditors from Sale Proceeds Plus Further Payment from Anticipated Increase in Stalking Horse Bid to Final Sale Price; (4) Payment of All Traditional and Customary Expenditures at Closing With Reserve for Carve Out for Claims and Professional Fees Each Being Subject to Allowance and/or Court Approval as Required and Reservation of Rights to Object; and (5) Mooting Stay Relief Motion* [Dkt. No. 92] (the "Settlement Motion") on a non-evidentiary basis and the objection thereto of Mr. Edrissi [Dkt. No. 95] (the "Settlement Objection").

In the stipulation [Dkt. No. 91] that is the subject of the Settlement Motion (the "Stipulation"), the Trustee and Wells Fargo Bank, N.A., as Trustee, on behalf of the registered holders of Morgan Stanley ABS Capital I Inc. Trust 2005-HE5, Mortgage Pass-Through Certificates, Series 2005-HE5 ("Wells Fargo"),[3] the first lienholder against the Property, agreed to

---

[3] On April 19, 2021, Wells Fargo filed a proof of claim in the amount of $811,287.74.

3

a guaranteed minimum carve out for general unsecured creditors of the lesser of $20,000 or 20% of the amount of allowed general unsecured claims (the "Creditor Carve Out"), plus 25% of any amount the sale price for the Property exceeds $590,000, up to 50% of the allowed general unsecured claims.  Wells Fargo also agreed to carve-out amounts for professional fees and closing costs approved by the Court. Following Court approval of the itemized deductions for closing costs, professional fees, and the Creditor Carve Out, the remaining sale proceeds (a minimum of $465,000), will be paid to Wells Fargo without further offset or reduction. At the Hearing, the Trustee confirmed on the record that he voluntarily intended to reduce his statutory commission such that the Creditor Carve Out would be at least $47,500, which he asserts would equal 50% of allowed unsecured claims based on the claims as filed.

Mr. Edrissi objected to the Stipulation on the basis that the carve out agreement is an attempt to subvert the requirements of § 363(j), which requires "proceeds" of a sale to be paid to co-owners proportionately in accordance with their interests after costs and expenses of the sale have been paid.  *See* 11 U.S.C. § 363(j). While Mr. Edrissi may not have standing to object to the Settlement Motion and approval of the Stipulation, his Settlement Objection dovetails with his defense of the adversary proceeding and his Sale Objection such that I have considered all of his arguments in determining the matters before me.  In the Settlement Objection, Mr. Edrissi also argues that this Court should not approve an arrangement where the Trustee agrees to sell a property on behalf of a secured lender for what he characterizes in argument as a "tip," because legal fees incurred by estate professionals will likely be significantly more than the estate's recovery (even though the secured lender will pay those fees from amounts that would otherwise be paid to it) and the distributions will generate a commission for the Trustee.

The following constitutes my findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Rules 7052 and 9014(c) (as

4

to the contested matters) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To the extent any conclusion of law is referenced as a finding of fact, but is actually a conclusion of law (or the opposite), it is adopted as such.[4]

## II. Discussion

I have considered all of the pleadings filed in relation to each of these matters, the documentary evidence admitted at trial and the testimony of each of the witnesses, the Trustee, Peggy Pratt Calle, real estate broker to the Trustee, and Sam Edrissi, including certain designated deposition testimony of Mr. Edrissi. I have also considered the portions of the affidavits admitted or stipulated into evidence, the arguments of counsel, and entire docket and record of record of the Debtor's case and the Adversary Proceeding.

### A. The Stipulation, Sale, and § 363(j)

Because certain of the issues to be determined in relation to the Adversary Proceeding in assessing benefit to the estate and harm to Mr. Edrissi are dependent on issues relevant to whether I would grant the Settlement and Sale Motions and approve the Stipulation and the sale of the Property to the highest bidder, respectively, I address those issues first.

Mr. Edrissi argues that, pursuant to § 363(j), the Trustee would be required to pay to Mr. Edrissi 50% of any amounts received by the estate, after payment of the direct costs of sale. This would include all amounts contemplated by the Trustee to be paid to his professionals unrelated to the closing and to unsecured creditors. If that is the case, the benefit to the estate, even considering the Trustee's intended contribution from his commission, would be substantially reduced – which could affect the determination of whether the Court should approve the sale of Mr. Edrissi's interest under § 363(h).

---

[4] Wells Fargo has also sought relief from stay to exercise its rights and remedies under applicable law with respect to the Property [Dkt. No. 13] (the "Motion for Relief"). The Motion for Relief was scheduled for the Hearing, but the matter was put over for consideration after the Court decides the Sale Motion, Settlement Motion, and the Complaint.

5

The Trustee argues that § 363(j) would require a payment to Mr. Edrissi only if there were "net proceeds" payable to the estate after payment of claims secured by the Property. He cites cases discussing what amounts should be deducted from the proceeds to determine net proceeds, such as *Ford v. Duggan (In re Duggan)*, 571 B.R. 1, 12 (Bankr. D.N.H. 2017) (in determining the amount of net proceeds, holding that the City of Malden, as an *in rem* claimant, has priority over the equity interests of co-owners and that, therefore, the real estate taxes must be paid in full prior to any distribution under § 363(j)); *Dahar v. Jackson (In re Jackson)*, No. 01-13153-JMD, 2003 WL 21991629, at *7 (Bankr. D.N.H. Aug. 6, 2003) (noting the non-debtor co-owner correctly argued that the mortgage liens and real estate tax liens must be paid from the gross proceeds, but finding the co-owner's position that any real estate broker's commission and real estate transfer tax should be paid by the Trustee from the estate's share of the net proceeds to be unavailing); *Brown v. Eads (In re Eads)*, 271 B.R. 371, 376 (Bankr. W.D. Mo. 2002) (finding that the one-half net proceeds of the sale of the residential property that must be paid is after payment of the closing costs and the mortgage debts and any other encumbrances thereon). *See also Desmond v. Francis (In re Francis)*, 597 B.R. 195, 201 (Bankr. D. Mass. 2019) (stating that the estate's share of the net proceeds is to exceed existing liens on the debtor's interest in the property in explaining the trustee's burden under § 363(h) to show that the sale of the property would produce a benefit to the estate); *Gray v. Burke (In re Coletta Bros. of N. Quincy, Inc.)*, 172 B.R. 159, 165 (Bankr. D. Mass. 1994) (same).

Mr. Edrissi does not dispute that mortgage liens and taxes that would be paid to effect the sale should be deducted in calculating net proceeds. Rather, it appears that Mr. Edrissi's focus is on the economic effect of the proposed Stipulation and its propriety generally where the Property is fully encumbered. He contends that, if the secured lender accepts less of the proceeds to satisfy its lien, any amounts paid to the estate should constitute "proceeds" of the sale that should be divided with him as joint owner.

6

The Trustee responds that it is undisputed that the record shows that Wells Fargo possesses an *in rem* claim against the Property in an amount that well exceeds the highest bid so there will be no net proceeds to the estate. Rather, Wells Fargo has agreed to compromise certain claims or defenses that the Trustee has alleged on behalf of the estate (not constituting claims of Mr. Edrissi) and to facilitate the sale of its collateral by paying the carve out. The Trustee asserts that the carve out, which is earmarked from the amounts otherwise payable to Wells Fargo, does not constitute proceeds of sale otherwise available to the estate, and should be viewed as "gifting" from the secured creditor, as has been approved in cases such as *Official, Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305 (1st Cir. 1993) and its progeny. The Trustee states that § 105 permits the Court to approve gifting arrangements.[5]

While carve outs generally arise in the context of Chapter 11 cases, bankruptcy courts have allowed carve outs in Chapter 7 cases to facilitate the sale of assets by a trustee. *See, e.g., In re Reece*, No. CV 17-2288-MWF, 2018 WL 11354886, at *5 (C.D. Cal. July 20, 2018) (even if the debtors had argued in the bankruptcy court that the carve out agreement is presumptively improper, the trustee would have been able to rebut that presumption and the bankruptcy court would have properly approved the carve out agreement over the debtor's objection*); In re KVN Corp.*, 514 B.R. 1, 7 (B.A.P. 9th Cir. 2014) (vacating bankruptcy court decision denying approval of stipulation and remanding for further proceedings; concluding that while there is no *per se* ban

---

[5] The Court of Appeals for the First Circuit (the "First Circuit") recognized in *Bessette v. Avco Fin. Servs., Inc.* that:

> While it is true that the considerable discretion conferred on courts sitting in bankruptcy by § 105 is not unlimited, in that it is not a roving commission to do equity, a court is well within its authority if it exercises its equitable powers to enforce a specific code provision, such as § 524. Thus, § 105 does not itself create a private right of action, but a court may invoke § 105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights.

*Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444–45 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000) (internal quotations and citations omitted).

7

on carve out agreements, such agreements have been reviewed under a standard of heightened scrutiny and determining that the trustee can rebut any presumption of impropriety that attaches to the sale of a fully encumbered asset by showing that the sale and distribution of proceeds in accordance with the carve out agreement will result in a benefit to the estate resulting in prospects for a meaningful distribution to unsecured creditors); *In re Reeves*, No. 10-02562-8-SWH, 2011 WL 841238, at *3 (Bankr. E.D.N.C. Mar. 8, 2011), *aff'd sub nom. Reeves v. Callaway*, No. 5:11-CV-280-F, 2012 WL 10180780 (E.D.N.C. Aug. 14, 2012), *aff'd*, 546 F. App'x 235 (4th Cir. 2013) (allowing a case trustee to sell the property free and clear of all liens, where IRS agreed to carve out 30% of the net proceeds of the sale for the payment of allowed administrative claims, with the balance to be paid on a pro rata basis to unsecured creditors and focusing on the fact that a carve out for the benefit of unsecured creditors is a carve out from the lien held by the IRS, not from a creditor who would be subject to the debtor's exemption).

Implicit in the Trustee's argument is that Mr. Edrissi has no rights under § 363(j) *with which approval of the stipulation could be inconsistent* since the Property is encumbered by secured claims exceeding its value, leaving Mr. Edrissi with no equity and no claim under § 363(j).[6] In *SPM*, the First Circuit held that a bankruptcy court must enforce an "sharing agreement" between a creditors'

---

[6] Further, given the explicit language of § 363(j) that it applies only after a sale has taken place under § 363(h), there is also an argument that the assessment of proceeds available for distribution under § 363(j) should not play a role in consideration of § 363(h). *See Desmond v. Green (In re Green)*, No. 13-10204-MSH, 2018 WL 4944988, at *6 (Bankr. D. Mass. Oct. 11, 2018). In *In re Green*, the court (Hoffman, J.) concluded that:

> [Non-debtor co-owner] conflates the balancing of the burdens analysis of § 363(h)(3) with the protection of the non-debtor co-owner's interest in § 363(j). She argues that Mr. Desmond's inability to comply with § 363(j) because he cannot distribute the sale proceeds so long as they are entireties property results, ipso facto, in his inability to meet the balancing of the burdens test of § 363(h)(3), thereby preventing a sale under § 363(h).A cursory reading of § 363(j) illustrates that such a contention is contrary to the language of the statute. Section 363(j) begins by stating that its application is to take place "after a sale of property to which subsection (g) or (h) of this section applies." 11 U.S.C. 363(j).

*Id.*

committee and a secured creditor that provided a carve out from the secured creditor's collateral proceeds to pay unsecured creditors when priority unsecured creditors would receive no payment. *In re SPM Mfg. Corp.*, 984 F.2d at 1307–08. The *SPM* case involved an agreement between a statutory creditors' committee with limited fiduciary duties to unsecured creditors and a secured creditor regarding proceeds that were not property of the bankruptcy estate. *Id*. at 1313. Since the First Circuit's approval of a carve out in *SPM*, there have been permutations and limitations with respect to the use of carve outs. For example, in *Czyzewski v. Jevic Holding Corp.*, the Supreme Court would not approve a structured dismissal that contemplated a carve out that altered the distribution priorities of the Bankruptcy Code without the consent of the affected creditor. *See* 137 S. Ct. 973, 983–86 (2017). While the analysis in SPM is only relevant by analogy to this case involving a co-owner and rights under § 363(j), the First Circuit's discussion of proceeds in that case is instructive:

> [T]he distribution scheme of section 726 (and, by implication, the priorities of section 507) does not come into play until all valid liens on the property are satisfied. If a lien is perfected and not otherwise invalidated by law, it must be satisfied out of the assets it encumbers before any proceeds of the assets are available to unsecured claimants, including those having priority (such as priority tax creditors).

*In re SPM Mfg. Corp.*, 984 F.2d at 1312 (citations omitted).

In reviewing the Stipulation under Rule 9019, I consider the following factors, among others: "(i) the probability of the success in the litigation being compromised; . . . [(ii)] the complexity of the litigation involved and the expense, inconvenience, and delay in pursuing [the litigation]; and [(iii)] the paramount interest of the creditors and a proper deference to their reasonable views." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see also Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 (1st Cir. 1998). Settlements should be approved if they fall above "'the lowest point in the range of reasonableness.'" *In re Healthco Int'l, Inc.*, 136 F.3d at 51 (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608

(2nd Cir. 1983)). In this case, those factors are met, and I will defer to the business judgment of the Trustee and approve the Stipulation,

I agree with the Trustee that Mr. Edrissi has no equity in the Property and has no claim under § 363(j) to amounts that would be carved-out of the secured claim of Wells Fargo. Mr. Edrissi would have no claim to any proceeds of any of the estate claims that are the subject of the Stipulation. As such, the benefit to the estate should be considered to be $47,500.

In his papers, Mr. Edrissi appears to raise an equitable claim that his interest is greater than 50% in the Property because of amounts that he has invested in the Property that he asserts are greater than amounts invested by the Debtor. This issue is not relevant where I have determined that proceeds of a carve out provided by the Stipulation are not "proceeds" distributable under § 363(j).

Mr. Edrissi also raises the issue of whether, under these circumstances, the Trustee is appropriately exercising his discretion in agreeing to pursue the sale of Property for Wells Fargo's benefit for what he characterizes as a "tip."[7] I infer from statements on the record and testimony of the Trustee that the fees of his counsel will significantly exceed any amount to be distributed to unsecured creditors. Because of the structure of the carve out, these amounts will not decrease the amount to be paid to creditors, but will be paid from proceeds otherwise payable to Wells Fargo. I would have considerable concerns if the Trustee sought to liquidate collateral for the benefit of a secured creditor for minimal benefit to the estate, but recognize that the Trustee must act to attempt to liquidate property of the estate to generate a meaningful dividend to creditors where possible.

---

[7] Mr. Edrissi cites to *In re Christensen*, 561 B.R. 195, 212 (Bankr. D. Utah 2016). In that case, the court discussed the notion of a "tip" and ruled that a "carve-out" of proceeds from the sale of debtors' over-encumbered homestead, negotiated by a trustee and a secured creditor, would have constituted proceeds of the debtors' homestead and, therefore, would be subject to the debtors' claimed exemption from the bankruptcy estate. *See id*. at 210-12. As such, the trustee's services in that case were not reasonably likely to benefit unsecured creditors because the debtors' homestead exemptions took priority over unsecured creditor claims. *See id*. at 210, 217-18. I decline to extend that court's reasoning by analogy to consideration of these issues involving the Stipulation and the rights of a co-owner.

Here, the Trustee has committed to allocate a portion of his commission to enhance the dividend to creditors and the benefit to the estate. It is unclear whether, without this enhancement, the amount to be distributed to the estate as a result of the Stipulation would warrant the Trustee's pursuit of the § 363(h) litigation given the administrative expenses incurred and the judicial resources expended. I share some of Mr. Edrissi's concerns regarding the propriety of the Stipulation in light of the amount of professional fees expended in relation to the base carve out amount provided by the Stipulation. Those concerns and related issues can also be addressed in connection with fee applications and should be viewed with deference to the business judgment of the Trustee at the time of the decision to pursue the Stipulation and sale. In this case, the present record on this issue is not an impediment to my approval of the Stipulation or sale. The Creditor Carve Out falls above the lowest point on the range of reasonableness, *see Healthco Int'l*, 136 F.3d at 50, and satisfies the higher scrutiny that might be applied to such a carve out agreement because it results in a meaningful distribution to unsecured creditors, *see generally*, *In re KVN Corp.*, 514 B.R. at 7.

    B.  <u>The Adversary Proceeding and § 363(h)</u>

Turning now to the Adversary Proceeding and § 363(h), I previously granted summary judgment on subsections(h)(1) and (4). I must now decide whether the Trustee demonstrated that: 1) a sale of the estate's undivided interest in the Property would realize significantly less for the estate than a sale of such property free of the interests of such co-owners under § 363(h)(2) and 2) the benefit to the estate of the proposed sale of the Property free of the interests of Mr. Edrissi outweighs the detriment, if any, to Mr. Edrissi under § 363(h)(3). "The burden of proof is on the [Trustee] to establish these conditions by a preponderance of the evidence." *Conti v. Laroque (In re Heinze)*, No. 02-83050C-7D, 2008 WL 3200216, at *2 (Bankr. M.D.N.C. Aug. 1, 2008). "A court's decision to allow a § 363(h) sale is an equitable judgment that is discretionary and fact

driven. The trustee has the burden of establishing all four elements under § 363(h)." *In re Francis*, 597 B.R. at 199–200 (citations omitted).

Regarding subsection (h)(2), "[i]t is generally accepted that the sale of a bankruptcy estate's undivided interest will generate substantially less than the sale of the property free of each owner's interest because of the chilling effect that the sale of the undivided interest usually has on prospective purchasers of the property." *Yoppolo v. Schwenker (In re Ziegler)*, 396 B.R. 1, 4 (Bankr. N.D. Ohio 2008) (citations omitted); *see also Maiona v. Vassilowitch (In re Vassilowitch)*, 72 B.R. 803, 807-08 (Bankr. D. Mass. 1987) (taking judicial notice of the fact that the estate's undivided interest would realize significantly less for the estate than a sale free of co-owner's interest subject to the co-owner having an opportunity to seek reconsideration of the Court's finding by presenting an affidavit of a qualified appraiser to the contrary).

The Trustee testified that he has 30 years experience as a Chapter 7 trustee that has included marketing and selling jointly owned property. In his experience, selling the entire ownership interest of property "usually" results in a greater value than just selling a partial interest. He testified that he believes that there would be no value if he attempted to sell just the Debtor's joint interest in the Property. He stated that, in his experience, buyers do not want to become partners with strangers and, in this case, would likely seek to avoid becoming involved in a dispute with the co-owner. He also stated that any buyer would discount the value of a partial interest because of a lack of control. I credit the testimony of the Trustee and find that he has met his burden on this issue and satisfied the requirements of § 363(h)(2). While Mr. Edrissi testified that he would pay $25,000 for the Debtor's interest in the Property and that he could borrow those funds, I do not credit that testimony. Mr. Edrissi did not offer any details of his funding sources and offered no evidence that he had made any prior offers to the Trustee or participated in any bidding process. Further, he offered no evidence to contradict the Trustee's testimony that there

12

would be no market for just the Debtor's joint interest at a value near what the estate would derive if the sale closed at the amount of the highest bid.

I am left with a more difficult question as to whether the benefit to the estate from a sale of the Property outweighs any detriment to Mr. Edrissi. The balancing of the detriment to a co-owner versus the benefit to the estate is a fact sensitive analysis that is decided on a case by case basis. *See, e.g., In re Duggan*, 571 B.R. at 10 (citations and quotations omitted). With regard to § 363(h)(3), although the Trustee has the ultimate burden of proof similar to all subsections of § 363, a shifting burden applies. *See Collins v. Duda (In re Duda)*, 422 B.R. 339, 349 (Bankr. D. Mass. 2010). The initial burden of the Trustee is only to show that sale of the Property free of the co-owner's interest would produce a benefit to the estate. *See id*. (citations omitted). Then if Mr. Edrissi shows that such a sale would produce a detriment to him, the Trustee must show that the benefit to the estate is greater than the detriment to the Mr. Edrissi. *See id*. (citations omitted).

I find that the benefit to the estate is $47,500, after giving effect to the stipulated carve out and the Trustee's allocation of a portion of his projected commission, such that the Trustee has met his initial burden. While the Trustee has noted that administrative expenses will be paid as part of the Stipulation and that the secured claims of the City of Malden and Wells Fargo will be paid from closing proceeds, I do not consider those payments to be a benefit to the estate in this case. The secured claims would be paid from proceeds of any disposition of the Property, although Wells Fargo has likely made a determination that it will receive a greater distribution from a sale by the Trustee. Further, a substantial amount of the administrative expense claims in this case are likely to relate to the Trustee's effort to sell the Property. There does not seem to be any dispute by the parties that $47,500 is an appropriate measure of the estate's projected benefit, even if they disagree whether that would be enough of a benefit to outweigh any co-owner detriment.

13

The analysis of the detriment to Mr. Edrissi is more complicated.  Mr. Edrissi has received his own bankruptcy discharge and is not obligated to make any mortgage payments.  He testified that he has not made any mortgage payments since 2015.  Mr. Edrissi also testified that he never receives any real estate tax bills. and it appears from the record that he has not paid real estate taxes.

The Property consists of two units.  The real estate broker testified that the unit occupied by Mr. Edrissi and his son has 4 bedrooms and is on the second and third floors.  There is another apartment that is occupied by Mr. Edrissi's family friend who he refers to as "cousin."  Mr. Edrissi testified that his friend does not rent the apartment, but that he "helps a little" and "sometimes pays $500 – sometimes nothing."  In his deposition, Mr. Edrissi stated that sometimes his friend pays him a "few hundred dollars, sometimes thousand, sometimes nothing."  *See Tr.'s Designation of Dep. Test. of Def.* [AP Dkt. No. 70] ("Dep. Tr.") 28:19–20. Mr. Edrissi's testimony was murky and conflicting on the details of this arrangement.  At his deposition, Mr. Edrissi also claimed not to be able to even pronounce the name of this individual. Dep. Tr. 27:4–6.  It appears from this record that the occupant of the first floor assists Mr. Edrissi with maintenance of the Property and contributes toward expenses.  Under these circumstances, I ascribe no detriment to Mr. Edrissi from a sale of the Property where his friend, who merely assists at times in paying expenses for and maintaining the Property itself, may be dispossessed.

Regarding dispossession of Mr. Edrissi and his son who live in the other unit, Mr. Edrissi testified that he can afford to pay $1,600 or $1,700 per month for a 2-bedroom apartment, but that those apartments located in the area of the Property would cost over $2,000 per month.  In his affidavit, Mr. Edrissi states that he and his son will be homeless if the Trustee sells the Property.  I do not credit that testimony, although it may be that Mr. Edrissi has to move to another location. Mr. Edrissi's counsel argues that Mr. Edrissi has no legal obligation to pay any mortgage and that

14

he is within his rights to essentially live at the Property for free until it is established that he has no right to be there. The Trustee expresses outrage at that position, but I must find that Mr. Edrissi would suffer some economic harm if the Property were sold and he had to rent new housing. Estimating that an alternative foreclosure and eviction process would take approximately fourteen months based on the Court's experience, I find that the cost of replacement housing for Mr. Edrissi and his son would be $22,400. I find that Mr. Edrissi will pay what he testified he can afford for monthly rent, and there was no other evidence introduced regarding housing alternatives.

In his affidavit, Mr. Edrissi states that he invested $100,000 in improvements after he purchased the Property, partly because the City of Malden had "demanded" to bring the Property up to code, and more recently made improvements to the decks of the house. *Def. Sam Edrissi's Tr. Aff.* [AP Dkt. No. 68] ("Edrissi Aff.") ¶¶ 2, 18. He testified at his deposition that these recent improvements were to avoid condemnation by the City of Malden. *See* Dep. Tr. 102:14–17. Mr. Edrissi states in his affidavit that the "material and time involved in these improvements cost [him] approximately $15,000 in materials and outside labor in addition to approximately $8,000 worth of labor performed by [him and his] cousin." Edrissi Aff. ¶18. In assessing the detriment to Mr. Edrissi of a sale by the Trustee of the Property, I do not place any detrimental value on the original improvements to the Property, as the secured debt exceeded the value of the Property. With respect to the most recent improvements, in addition to noting that even with these improvements the property value is less than the secured debt, I discount to $0 the loss of this value to reflect the 14 months of occupancy that I have assumed in assessing the cost of replacement housing. Had the house been condemned, the assumed "free" occupancy could not occur.

Detriment to a co-owner may include not just economic harm, but also psychological, emotional, and physical harm. *See Riley v. Anketell (In re Anketell)*, No. 15-11362-FJB, 2018 WL 4698668, at *3 (Bankr. D. Mass. Sep. 28, 2018) ("Courts have defined 'detriment' for purposes of

15

11 U.S.C. § 363(h) as economic hardship as well as any non-economic loss, harm, injury, or prejudice resulting from involuntary displacement") (citations omitted).  Here, Mr. Edrissi has introduced evidence of non-economic harm.  First, Mr. Edrissi testified that the Property is located close to his business.  It appears from his testimony that Mr. Edrissi has spent extended periods of time out of the country visiting his wife and that his business has been open for irregular hours because of the pandemic.  Even assuming that Mr. Edrissi were to resume full-time work at his business, I find no material detriment from the inconvenience of a possibly longer commute to his business in Sommerville.

    Mr. Edrissi also testified that his son is a Senior in high school and is presently able to walk to school.  It appears from Mr. Edrissi's testimony that his son has lived alone in the second floor unit while Mr. Edrissi traveled and has been looked after by Mr. Edrissi's friend, who occupies the first floor unit, and his brother.  I do not ascribe material detrimental value to the emotional impact on Mr. Edrissi from a sale of the Property, but do find that there would be a detrimental value associated with a possible move during the son's school year.  I do not have any substantial evidence on the record regarding the son's ability to remain at Malden High School or the possibility of relocating temporarily within Malden.  Clearly, a move would be disruptive to a minor student under any circumstance.  In this case, such a disruption is mitigated slightly by the time that will be required to close a sale and possibly to evict Mr. Edrissi from the Property.  Mr. Edrissi may also have the possibility to pay rent to the new owner and agree on a move out date that would coincide with the end of the school year, but there is no evidence to support that possibility. While it is difficult to determine the value of the detriment associated with the son's displacement, and the record is sparse on specifics regarding this issue, I find that, when combined with the economic detriment of relocation that I have found to be $22,400, the overall detriment to Mr. Edrissi is not as great as the benefit to the estate of a sale of the Property by the Trustee.

Mr. Edrissi has alluded to the fact that he is being deprived of the opportunity to assert defenses to enforcement of the Wells Fargo mortgage against his interest in the Property and the opportunity to seek a modification or settlement. These arguments are undeveloped. Mr. Edrissi has not articulated the basis for any claims or defenses not barred by statutes of limitation and has introduced no evidence supporting any such claims. I do not ascribe any detriment to Mr. Edrissi on account of these undeveloped theories, but do not make any findings regarding the existence of any claims that may be possessed by Mr. Edrissi.

With evidence of the $47,500 carve out for unsecured creditors that will provide a meaningful dividend of 50%, the Trustee has met his initial burden of demonstrating that the estate will benefit from a sale of both Mr. Edrissi's and the Debtor's interests as co-owners of the Property. Mr. Edrissi has demonstrated that he will be detrimentally affected by a sale, but the Trustee has demonstrated by a preponderance of the evidence that any detriment to him is outweighed by the benefit to the estate.

### III.    Conclusion

For the reasons that I have stated, I will enter judgment in the Adversary Proceeding in favor of the Trustee. I will also enter orders approving the Stipulation and authorizing the sale of the Property on the terms proposed by the Trustee, except that the sale order will be subject to a fourteen day stay by operation of Bankruptcy Rule 6004(h).

The Adversary Proceeding posed a close call. The Trustee's determination to allocate a portion of his commission to unsecured creditors bolstered his ability to meet his burden in this case. The fact that the Trustee was required to allocate a portion of his projected commission to meet his burden highlights that the Trustee's exercise of discretion to pursue the sale of jointly-owned property in this case may have been imprudent. At the appropriate time, the Court will consider the reasonableness of the administrative expenses incurred by the Trustee in this effort,

given the risks of success associated with the pursuit of the § 363(h) determination and amount of the baseline carve out negotiated by the Trustee.

By the Court,

Dated: November 12, 2021

_____
Christopher J. Panos
United States Bankruptcy Judge